Williams, J.
On the fifteenth day of December, 1889, Horace Holcomb, then the owner of a store room on M onroe street in the city of Toledo, executed a lease of the same to Thomas J. Gladwell for the term of one year commencing on the first *432 day of January, 1890; the lessee agreeing to pay as the rent therefor the sum of three hundred and sixty dollars, in monthly installments of thirty dollars each on the first day of each month during the term, and further agreeing to surrender possession of the'premises at the end of the term to the lessor, his heirs, or assigns. The lessee occupied the premises and paid the rent according to the lease during the term, and 'continued to hold over and pay rent at the same rate from year to year thereafter, until and including the year 1896. On the thirty-first day of August, 1896, the lessor having then died intestate, his heirs to whom the estate descended, served the tenant with a written notice to yield possession to them on the first day of January following. The tenant having failed to comply with that notice, and with the further notice required by the statute to leave the premises within three days which was served on him on the second day of January, 1897, the heirs of Holcomb brought their action of forcible detention against him, before a justice of the peace of Lucas county. That action was defended on the grounds, (1) that the tenancy having become one from year to year, after the expiration of the lease, could not be determined by the complainants without a notice to that effect given six months' previous to the end of the year; and, (2) that the tenant, during his occupancy, had a verbal contract with the lessor for a further lease of the premises for the period of ten years. The justice instructed the jury that six months’ notice was not necessary to the determination of the defendant’s tenancy, and, that the verbal agreement, if one was made, was invalid. A verdict was returned against the defendant, on which judgment of restitution was *433 rendered in favor of the complainants. The defendant, claiming1 there was error in the instructions of the justice to the jury, sought to have the judgment reversed; but it was affirmed in the court of common pleas, whose judgment was affirmed by the circuit court; and the two questions arising upon the charge are presented for decision by this court.
That Gladwell’s occupancy of the premises by holding over with the assent of his landlord after the expiration of the lease, became a tenancy from year to year, upon the terms, and subject to the conditions of that lease, is settled by the recent case of Raillroad Co. v. West, 57 Ohio St., 161. But what notice, if any, is requisite to the termination of a tenancy of that nature by either party without the consent of the other, has not, as far as we have been able to discover, been considered in any reported decision of this court.
It is not doubted that when the time of the termination of a tenancy is definitely fixed, the landlord, upon the expiration of that time, may maintain an action for possession without any notice to quit except the three days notice required by the statute; nor, generally, that upon the termination of a farming lease of uncertain duration, otherwise than for his own default, the tenant is entitled to emblements. Leases of this latter class, though strictly creating tenancies at will, were early construed by the English courts into tenancies from year to year, when a periodical rent was paid; and out of them, and of leases that by their terms were to continue from year to year, grew the common law rule requiring notice from the party desiring to bring the tenancy to *434 an end. That rule rests upon the presumed intention of the parties that such tenancy should be prolonged for an indefinite number of years, and that, so being of uncertain duration, either party should have reasonable notice before the expiration of any year, of the other’s intention to end it. In agricultural tenancies the notice was fixed at six months, in order that the tenant might be enabled to reap, before he should be dispossessed, the crops which he had sown; though Mr. Justice Wilmot, in Timmons v. Rowlinson, 3 Burr, 1603, 1609, is authority for the statement that the notice required “varied according to the custom of different counties.” The rule was afterwards extended, without apparent reason, to like tenancies of tenements, and of other property not used for agricultural purposes. It has in this enlarged application, varying as to the length of the notice required, been adopted in some of the states by statute, and in others by adjudication of their courts; but has not hitherto obtained in this state, where the doctrine of emblements in cases of farming tenancies of indefinite duration has been adhered to. A distinction has been made between those tenancies from year to year from which, as has been seen, the rule requiring notice to quit had its origin, and those arising from a holding over by the tenant after the expiration of a lease for a specified term. In each year of occupancy under the former, there is, it is said, a growing-interest in the ensuing year springing out of the original contract; while in the latter case, a new contract arises each year of the holding over, by implication from the conduct of the parties. This distinction is pointed out in the opinion of Chief Justice Marshall, in Alexander v. Harris, 4 Cranch, *435 298, 302, in showing that a plea of a demise for three years is not supported by proof of a lease for one year and a holding over for two years thereafter. It is there said : ‘ ‘The lease stated in the avowry is obviously a different lease from that which was given in evidence. A lease for three years is not a lease for one year. But it is contended that a subsequent possession, without any new express agreement amounts to an extension of the original lease, and for this Bacon’s Abridgment, and a dictum of Judge Buller, in the case of Birch v. Wright, 1 Term Rep., 378, have been cited. But those eases do not prove the point they were supposed to establish. In those cases, the original terms of the lease admit of the extension which was afterward made by consent of parties. The lease was made for one year, and afterwards from year to year, as long as both parties should please. The principle of continuance is introduced into the original contract, and the occupation for three years is evidence that the circumstance had occurred, by force of which the contract should be a lease for three years. But in this ease the original contract contains no principle of continuance. It is for a limited time, and can only be extended by a new contract, either express or implied.” A similar view of the contract arising each year that the tenant holds over beyond the term of his lease? was expressed by this court in Railroad Co. v. West, 57 Ohio St., 161, 168, where, as showing that such a contract does not fall within the statute of frauds, it is said: “The tenant, by holding over, is regarded as consenting or proposing to enter upon a new term for another year at the same rent and upon the conditions of the prior occupancy, and the landlord’s acceptance of the pro *436 posed, tenancy is presumed from his receiving the rent, or other acquiescence. The agreement arises by implication of law from the conduct of the parties after the expiration of the former tenancy; and, in this respect, is essentially different from those agreements made by parties while in possession under an existing lease, for a new lease to commence in the future; as was the case of Armstrong v. Kattenhorn, 11 Ohio, 265, and Crawford & Murray v. Wick, 18 Ohio St., 190. Here the new agreement grows out of, and is founded upon, the possession evidenced by the holding over; and is therefore referable to it, rather than to the possession under the prior agreement which had expired. The holding over is equivalent to a-new entry.”
As the assent of both parties is necessary to the creation of this new contract at the beginning of each year, it is obvious that if the tenant chooses not to hold over, and vacates the premises at the end of any year, the tenancy ceases without liability for rent for the ensuing year, though no notice of his intention to remove be given, as certainly as it does upon the expiration of a lease expressly made for a specific term.. So it does, though he hold over, unless the landlord chooses to accept him as a tenant for another year. By remaining1 in possession without any new arrangement, the tenant is regarded as offering to take the premises for another year Upon the terms of his tenancy which has just expired. But the landlord is not bound to accept the offer; and unless he does so, by receiving rent, or some other act of assent or acquiescence, the tenancy is thus terminated, and notice of his intention not to renew it for another year is unnecessary. The holding over after the end *437 . of any year, without the landlord’s consent, is equivalent to holding over after the expiration of a lease for a specific term. And, if the landlord does not choose to accept the proffered tenancy for another year, he is at liberty to treat the occupant as a trespasser, and may maintain ejectment against him, without previous notice of his intention not to prolong the tenancy. This result necessarily follows from the fact that the tenancy terminates at the close of the year, unless the. parties by some new agreement, express or implied, extend it for a longer period. Some of the authorities on this subject are referred to in Railroad Co. v. West, supra, and there are numerous others. It is not readily seen how, otherwise, such a tenancy could escape the statute of frauds. If six months, or any number of months notice, before the end of the year were required to terminate the tenancy, then, upon the failure to give such notice a new implied agreement, with the tenant in possession under a former one, would immediately arise, for another year commencing in the future, which could not less certainly be obnoxious to the statute than an express parol agreement for a future lease; and an agreement of that kind not accompanied with actual possession taken under it has been repeatedly held invalid. Our statute authorizes a suit in forcible detainer,, in all cases without exception, against tenants who hold over their term; and no notice is necessary before the commencement of the suit, except a written notice to leave the premises within three days after its service. This requirement was complied with.

Judgment affirmed.